Nott, J.
The sheriff by taking property in execution becomes, in contemplation of law, the legal owner. But he acquires a mere qualified property, to execute the trust reposed in him by virtue of his office. Whenever, therefore, the object of the levy is answered, the right of property ceases. If the owner of the property pays the money, the title of the sheriff is at an end, and it reverts to its former proprietor. If therefore, Rochell had been the defendant, there could be no doubt that he might have set up this defence, if there was no younger executions. But Rochell had sold to Spivy; he therefore must be considered as standing precisely in the situation in which Rochell stood at the time of that transfer. Now, I apprehend there can be no doubt, that a man whose property is under execution, may sell or mortgage that property subject to such lien, for the purpose of paying off the debt; and that incumbrance being removed, the purchaser, or mortgagee has a good title. And 1 presume it admits of as little doubt, that it cannot be disturbed in the hands of such purchaser, by any subsequent *496 executions. Spivy therefore being a bona fide purchase?, Was entitled to the property, after the prior incumbrances were removed. His right could not be effected by any subsequent executions. I think, therefore, that the presiding judge erred in the opinion which he expressed, that the junior executions were a lien upon the property.
Williams for the motion.
O’Neal and Sims contra.
It is said that the present defendant is a stranger to Spivv, and therefore he cannot set up this defence, but must comply with his contract with the sheriff. That is true, but he may shew that he has delivered the property to Spivy, or that Spivy has transferred it to him, or he may give any other evidence by which he can identify himself with Spivy for the purposes of this defence, (a.) It is said no such evidence was given. But it was precluded by the opinion expressed by the court that it would have been unavailing. It would not only have been disrespectful to the court but a perfectly nugatory' act to have offered the evidence, until the legal question was disposed of.
I am of opinion, therefore, that a new'trial ought to be granted.

) In Hull vs. Piekersgill, 1 Brod. & Bing. 282, the court of Common Pleas in England seems to have gone farther. There “ the house of the plaintiff, an uncertificated bankrupt, was broken open, and effects acquired by him subsequently to his bankruptcy taken by the defendants, who had become his creditors since the bankruptcy, and did not know who were the assignees under the bankruptcy. The bankrupt having sued the defendants in tresspass, they obtained, after a rule for plea, a surrender of the assignees’ interest in the effects seized: Held, that this was a ratification of the seizure, and that the plaintiff could not recover,” under the maxim, omnia ratihabitio retrotrahitur, et mandato asejuifiarentur. But it was said by Park J. that the rule was applicable to torts only, and not to contracts. (See Hagedoon vs. Oliverson, 2 M. & S. 485, which was a case of a contract, also a ease in the Year Books, 7 Hen. 4, 35.) “ The rule of law, said C. J. Dallas, in the above case of Hull vs. Piekersgill, is, that he, for whom a trespass is committed, is no tres*- *497 passer, unless he agrees to the trespass; but if he afterwards agree to it, his subsequent assent has relation back, and is equivalent to a command, according to the well established maxim omnis ratihabitio, See.” I do not know that the doctrine oí ratihabitio is exactly applicable to the principle decided in the text, but there can be mo doubt that it has been taken from the civil law, though adopted in England as early as Henry IV. and in the civil law it has always been applied to contracts. From the civil law writers, I collected the following facts.
Ratahabitio or ratahibitio, a legal confirmation of an act originally illegal; as where the consent of a father is necessary to the validity of a marriage: or the assent of a guardian,to the contract of a minor. The doctrine is treated by Huber in the third volume of his Rralectiones Juris, page 1170, Deritu nufitiarum. The general rule is that wherever a beneficial privilege is given by law to any one to assent or not to assent to the acts of others, he may at any time wave this privilege, and confirm as from the beginning, an act originally illegal and void. Such a confirmation has relation back to the inception of the act. Thus a marriage void for want of parental assent under the civil law, bastardizes the issue; but if that assent be subsequently-given, the issue are thereby legitimatized. Quicquid est nullum, Jit ab origine validum, si fiostea acquiescat is, in cujus gratiam lex nullitatem statuit. This rule includes a great part of the doctrine of Relation of the English law. .,See the head de JVufitiis in the Digest and the Code.